# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

### LAFAYETTE DIVISION

DARRYL GILBERT EDWARD HEDGE      CIVIL ACTION NO. 06-0244

VS.      SECTION P

FEDERAL BUREAU OF      JUDGE DOHERTY
INVESTIGATION, ET AL.

     MAGISTRATE JUDGE HILL

## REPORT AND RECOMMENDATION

Before the court is a civil rights complaint filed pursuant to 42 U.S.C. §1983 and

*Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 91

S.Ct. 1999, 29 L.Ed.2d 619 (1971) on February 10, 2006.[1]  Plaintiff is an inmate in the

custody of the Louisiana Department of Public Safety and Corrections. He is incarcerated

at the C. Paul Phelps Correctional Center, in DeQuincy, Louisiana.  Plaintiff claims that

he is wrongfully incarcerated as a result of a "two-part eight (8) year continuous

conspiracy" on the part of state prosecutors, judges, and court reporters from the

Sixteenth Judicial District Court, the Iberia Parish Clerk of Court, and the United States

Department of Justice.  He has named federal, state, and local agencies and their

---

[1] Section 1983 does not apply to federal employees and agents;  since plaintiff has named the United States Department of Justice and the Federal Bureau of Investigation as defendants, plaintiff's claim against those defendants is construed  as filed pursuant to *Bivens* which authorizes civil rights suits against federal employees or agents.  *See Affiliated Professional Home Health Care Agency v. Shalala*, 164 F.3d 282, 286 (5th Cir. 1999); *Broadway v. Block,* 694 F.2d 979, 981 (5th Cir.1982); *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

employees as defendants.[2]  Plaintiff  prays for a declaratory judgment ("declaring my right to have my claims investigated by federal authorities"), injunctive relief ("stay all proceedings in connection with docket # 04-CR-1398 and any use of that incident of arrest on docket # 97-CR-1106 [and] a temporary injunction against any proceeding to prosecute [plaintiff] in connection with the incident leading up to docket 04-CR-1398 until a thorough investigation is completed ..."),  and money damages "from each defendant at the state level."  [doc. 1-1, p. 4, paragraph V].

This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the court.

## STATEMENT OF THE CASE

Plaintiff alleges three broad claims for relief: (1) "Under the pretense of a probation revocation hearing, the District Court and the Prosecutor forced me into a mock trial on a still pending charge in violation of my Fourth, Fifth, Sixth and Fourteenth Amendment Rights involving the pending charge"; (2)  "All transcripts of the District Court proceedings held under Docket Number 97-CR-1106 in the Parish of Iberia, in the Sixteenth Judicial District of the State of Louisiana have been maliciously falsified"; and

---

[2]In his standardized complaint, plaintiff names Assistant District Attorney Bofil Duhe, Sixteenth Judicial District Judges Lori Landry and Carl J. Williams (deceased), the Sixteenth Judicial District District Attorney's Office, Andy Marsh of the Federal Bureau of Investigation, the United States Department of Justice, and Sixteenth Judicial District Court court reporter Nancy Smith.  In the caption of his proceedings, plaintiff lists the Federal Bureau of Investigations, the State of Louisiana, Iberia Parish, the Sixteenth Judicial District Court, Iberia Parish Clerk of Court Michael Thibodeaux and Sixteenth Judicial District District Attorney J. Philip Haney as additional defendants.

(3) "Federal Law Enforcement Agencies Have Refused to Investigate My Claims."

These claims are discussed below.

**1. "Under the pretense of a probation revocation hearing, the District Court and the Prosecutor forced me into a mock trial on a still pending charge in violation of my Fourth, Fifth, Sixth and Fourteenth Amendment Rights involving the pending charge." [doc. 1-3, pp. 3-23]**.

On April 9, 2004, plaintiff was arrested by the New Iberia Police Department and charged with various traffic violations including driving while intoxicated, fifth offense. *See* LSA R.S.14:98. At the time of his arrest, plaintiff was on probation for a prior conviction under Iberia Parish docket number 97-1106. Accordingly, plaintiff's probation officer, Anne Denson, lodged a detainer. In due course, charges stemming from plaintiff's April 9, 2004 arrest were filed in the Sixteenth Judicial District Court, for Iberia Parish, under docket number 04-1398.

On May 24, 2004, a preliminary probation revocation hearing in case number 97-1106 was held before Judge Lori Landry of the Sixteenth Judicial District Court. At the hearing, plaintiff admitted that he had been arrested in April 2004, but denied guilt. Plaintiff's request for appointment of counsel for the final revocation proceeding was denied. The hearing was set for July 30, 2004.

The revocation hearing scheduled for July 30, 2004 was continued until September 15, 2004. During the interim, plaintiff corresponded with Judge Landry, maintaining his innocence of the new driving while intoxicated charge. At the September 15, 2004 hearing, Judge Landry provided prosecutor, Assistant District Attorney Bofil Duhé, with

copies of plaintiff's *ex parte* communications with her.   After some discussion, the revocation hearing was continued.   Plaintiff was then arraigned on the new D.W.I. Fifth Offense charge in docket number 04-1398, and counsel was appointed to represent him with respect to that  charge.

On February 9, 2005, plaintiff's  revocation hearing in docket number 97-1106 was held. [doc. 1-14, pp. 21-22].  At the hearing, Anne Denson, plaintiff's probation officer, and Officer Mark LeBlanc, the New Iberia Police Department officer who arrested plaintiff and charged him with D.W.I. Fifth Offense, testified.  [doc. 1-15, pp. 3-49].  At the conclusion of the hearing, Judge Landry determined that there was "sufficient evidence on which to revoke ... [plaintiff's] probation ..."  and accordingly, Judge Landry sentenced plaintiff to serve the suspended portion of petitioner's prior sentence.  [doc. 1-15, p. 46].

Plaintiff contends that his revocation proceeding was conducted in violation of  his Fourth, Fifth, Sixth and Fourteenth Amendment rights because he was  "forced into a mock trial concerning only a pending charge while both the judge and prosecutor knew I had not seen an attorney on the pending charge." [doc. 1-3, p. 11].  Moreover, plaintiff contends that his rights were violated because the probation violation was based on a "pending charge" of which he was not guilty.  [doc. 1-3, p. 21].  Finally, he contends that the "mock trial" was unconstitutional because he was unrepresented by counsel as a result of the denial of his request that counsel be appointed to represent him. [*id*., p. 22].

Plaintiff further contends that the transcript of the February 9, 2005 revocation proceeding has been falsified, and therefore does not reflect accurately the testimony and events that occurred on that date. [doc. 1-3, p. 13]. He also claims that four other transcripts filed in case number 97-1106 have been falsified.

## 2. "All transcripts of the District Court proceedings held under Docket Number 97-CR-1106 in the Parish of Iberia, in the Sixteenth Judicial District of the State of Louisiana have been maliciously falsified." [doc. 1-3, pp. 24-30].

Plaintiff claims that all court transcripts in the proceedings under Docket Number 97-1106 have been "maliciously altered" and are therefore "fraudulent documents." [doc. 1-3, p. 24].

More specifically, plaintiff claims that in 1997 when the charges in case number 97-1106 were pending, his attorney, David Groner, advised that he had secured a plea agreement, whereby in return for plaintiff's guilty plea to the pending charges, plaintiff would be sentenced to serve two years in prison. Accordingly, on December 1, 1997, plaintiff pled guilty before the late Judge Carl Williams and was sentenced as agreed. Judge Williams then made the sentence executory in thirty days to allow plaintiff to put his affairs in order. However, Mr. Duhé, the prosecutor, objected. After a conversation between Judge Williams, Mr. Groner, and Mr. Duhé, Judge Williams "took back the sentence." Plaintiff returned to court on June 22, 1998, and was sentenced to serve 20 years imprisonment. Plaintiff asked Groner to explain this change in circumstance and Groner advised that plaintiff had turned down the two year plea offer. [*id.*].

Nevertheless, plaintiff pressured Groner into filing a Motion to Reconsider Sentence; however, the motion filed by Groner made no mention of the breached plea agreement. [*id.*, p. 26]. Therefore, on July 21, 1998, plaintiff filed a *pro se* Motion to Reconsider Sentence which included allegations concerning the breached plea agreement. Plaintiff also filed motions to obtain the transcripts for his December 1, 1997 guilty plea and the June 22, 1998 sentencing. Plaintiff eventually obtained these transcripts. He claims, however, that the transcript of the plea colloquy was "fictitious" and that the sentencing transcript had been altered. [*Id.*]. Plaintiff further claims that he discussed the alteration in the sentencing transcript with his mother, and that this conversation was overheard by jail employees. Thereafter, sometime between November 1998 and January 1999, plaintiff claims that the transcript was "switched out" of his jail locker and replaced with another version of the transcript. [*id.*].

On November 20, 2000, a hearing on plaintiff's counseled Motion to Reconsider was held before Judge Williams. Plaintiff's original twenty year sentence was vacated and plaintiff was re-sentenced to serve twenty years, with all but ten years suspended. [*id.*, p. 27].

Plaintiff obtained additional copies of his plea and original sentencing transcripts. He contends that these transcripts were also altered. Thus, in May 2001, plaintiff wrote to seven United States District Judges and Magistrate Judges, to the Unites States Department of Justice, Section Chief, Special Litigation Unit, the Federal Bureau of

Investigation, the United States Marshal, the American Civil Liberties Union, and "other legal organizations" in an attempt to "report ... a crime" and obtain an investigation of the altered transcripts. [*id.*, p. 28].

On June 20, 2001, plaintiff filed an Application for Post-Conviction Relief in the Sixteenth Judicial District Court. When Judge Williams failed to timely rule on his application, plaintiff filed a petition for mandamus in the Third Circuit Court of Appeals. On September 28, 2001, that court ordered Judge Williams to act on the post-conviction pleading. However, Judge Williams died in January 2002 before he had the opportunity to rule on plaintiff's post-conviction application. [*id.*, p. 29].

Ultimately, plaintiff hired attorney Elizabeth A. Long to expedite his post-conviction application. On February 4, 2002, she filed a Motion to Set Hearing. Judge Don Hernandez, who had been appointed to fill the vacancy occasioned by Judge Williams's death, denied relief on the Application on February 8, 2002. [*id.*, p. 30]. Plaintiff's applications for writs in the Third Circuit Court of Appeals and the Supreme Court were ultimately denied. [*id.*].

### 3. "Federal Law Enforcement Agencies Have Refused to Investigate My Claims." [doc. 1-3, pp. 30-32]

Plaintiff contends that despite his many requests, none of the federal agencies or its employees have initiated an investigation of his complaints concerning the alteration of his transcripts. Plaintiff claims that "[b]y ignoring [his] claims these federal agencies have basically committed an act of negligence, and have assisted the perpetrators in their cover up conspiracy, through that negligence." [*id.* at 32].

## LAW AND ANALYSIS

**Frivolity Review**

When a prisoner files a complaint in a civil action seeking redress from a governmental entity or officer or employee of a governmental entity, the district court is obliged to review the complaint as soon as is feasible and to dismiss the case if it determines that the complaint is frivolous, malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. See 28 U.S.C.A. § 1915A. Section 1915A "applies regardless ⋯ whether the plaintiff has paid a filing fee or is proceeding [IFP]." *Ruiz v. United States,* 160 F.3d 273, 274 (5th Cir.1998).

A complaint is frivolous if it lacks an arguable basis in law or fact. *Gonzalez v Wyatt,* 157 F.3d 1016, 1019 (5th Cir. 1998) citing *Siglar v. Hightower,* 112 F.3d 191, 193 (5th Cir. 1997). A claim has no arguable basis in law if it is based on an indisputably meritless legal theory. *Davis v. Scott*, 157 F.3d 1003, 1005 (5th Cir.1998). A claim has no arguable basis in fact if "after providing the plaintiff the opportunity to present additional facts when necessary, the facts alleged are clearly baseless." *Talib v. Gilley*, 138 F.3d 211, 213 (5th Cir.1998). A complaint fails to state a claim upon which relief may be granted if it is clear the plaintiff cannot prove any set of facts in support of his claim that would entitle him to relief. *Doe v. Dallas Independent School District*, 153 F.3d 211, 215 (5th Cir. 1998).

When determining whether a complaint is frivolous or states a claim upon which relief may be granted, the court must accept plaintiff's allegations as true. *Horton v. Cockrell*, 70 F.3d 397, 400 (5th Cir. 1996) (frivolity); *Bradley,* 157 F.3d at 1025 (failure to state a claim).

Plaintiff has filed a detailed complaint as well as a 32 page hand-written brief in support of his claims. Thus, it is clear that plaintiff has articulated all of the facts available in support of his claims. Based upon the thoroughness of plaintiff's pleadings, it is equally clear that plaintiff has pleaded his best case. Therefore, further amendment is unnecessary. Accepting all of plaintiff's allegations as true, and, giving plaintiff the benefit of every doubt, the court concludes, for the reasons stated hereinafter, that plaintiff's civil rights claims are barred under the principles set forth in *Heck v. Humphrey*, and that plaintiff has failed to state claims upon which relief may be granted, that his claims are frivolous, and that he has sued defendants who are immune from suit. Thus, this action will be summarily dismissed.

## I. Revocation Proceeding

### A. *Heck v. Humphrey*

Plaintiff seeks monetary damages from the state defendants in connection with his allegedly unconstitutional state revocation proceeding. It is well established that to recover damages for an allegedly "unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a §1983 plaintiff must prove that the conviction or sentence has been reversed on

direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determinations, or called into question by a federal court's issuance of a writ of *habeas corpus* [under] 28 U.S.C. § 2254 ." *Heck v. Humphrey*, 512 U.S. 477, 486-87, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994).

A claim for damages that bears a relationship to a conviction or sentence that has not been so invalidated is not cognizable under 42 U.S.C. § 1983. *Id.* If judgment in favor of a civil rights plaintiff would "necessarily imply the invalidity of his conviction or sentence," then the complaint must be dismissed unless the plaintiff demonstrates that the conviction or sentence has already been invalidated. *Id.*

*Heck* applies to quasi criminal proceedings which call into question the fact or duration of probation or parole. *Jackson v. Vannoy*, 49 F.3d 175, 177 (5th Cir.1995), *cert. denied*, ---U.S.---, 116 S.Ct. 148, 133 L.Ed.2d 93 (1995); *Littles v. Board of Pardons and Paroles,* 68 F.3d 122, 123 (5th Cir. 1995). Moreover, the *Heck* rule applies to claims for declaratory and injunctive relief if a favorable judgment would "necessarily imply" the invalidity of the prisoner's "conviction" in the disciplinary proceeding. *Edwards,* 117 S.Ct. at 1588-89; *Clarke,* 154 F.3d at 190-91.

Plaintiff's claim would, if true, necessarily implicate the validity of his state court criminal revocation proceeding and the sentence imposed therein. Plaintiff does not allege, nor does the published jurisprudence of the State of Louisiana establish, that plaintiff's probation revocation, or the sentence imposed, has been set aside. Accordingly,

10

plaintiff's claims directed at the validity of plaintiff's probation revocation proceeding are barred by *Heck;* they are not cognizable under 42 U.S.C. § 1983 at this time. These claims must be dismissed with prejudice for failure to state a cognizable claim. *See Johnson v. McElveen*, 101 F.3d 423, 424 (5th Cir.1996) (explaining that claims barred by *Heck* are "dismissed with prejudice to their being asserted again until the *Heck* conditions are met").

**B. Judicial Immunity**

Even if plaintiff's damage claims against Judge Lori Landry and the late Judge Carl J. Williams were not barred by the rationale of *Heck v. Humphrey*, his claims are nevertheless not cognizable. Judges enjoy absolute judicial immunity from liability arising out of performance of their judicial duties[3], regardless of bad faith. *Mireles v. Waco,* 502 U.S. 9, 112 S.Ct. 286, 116 L.Ed.2d 9 (1991); *Pierson v. Ray,* 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967); *Stump v. Sparkman,* 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978). "A judge will not be deprived of immunity because he was in error, took action maliciously or was in excess of his authority; rather he will be subject to liability only when he has acted in the clear absence of all jurisdiction." *Brandley v. Keeshan*, 64 F.3d 196, 200 (5th Cir. 1995); *Young v. Biggers*, 938 F.2d 565, 569 n. 5 (5th Cir. 1991). With respect to jurisdiction, the issue "is whether at the time [the judge] took

---

[3]Acts are judicial in nature if they are (1) normal judicial functions, (2) that occurred in the judge's court or chambers and were (3) centered around a case pending before a judge. *Mireles, supra; Brewer v. Blackwell*, 692 F.2d 387, 396-397 (5th Cir. 1982).

the challenged action he had jurisdiction over the subject matter before him." *Stump*, 435

U.S. at 356-57, 98 S.Ct. at 1105.

Judges Williams and Landry presided over plaintiff's complained of original

criminal sentencing and probation revocation proceeding, respectively. Accordingly,

plaintiff's claims against Judges Williams and Landry clearly arise out of the performance

of their judicial duties. Moreover, as Louisiana District Court Judges, Judges Williams

and Landry had original subject matter jurisdiction to hear all state criminal and civil

matters. La. Const. Art. 5 §16. In sentencing Hedge, late Judge Williams was

exercising the authority vested in him by the Constitution and statutory law of the State of

Louisiana on cases pending before him in the court of general jurisdiction to which he

was elected. Likewise, in revoking Hedge's probation, Judge Landry was exercising the

authority vested in her by the Constitution and statutory law of the State of Louisiana on

cases pending before her in the court of general jurisdiction to which she was elected.

Accordingly, it is clear that Judges Williams and Landry did not act "in the clear absence

of all jurisdiction". Because Hedge's claims against Judges Williams and Landry are

directed at actions undertaken in the performance of their judicial duties, plaintiff's

damage claims are barred by the doctrine of absolute judicial immunity.

## C. Prosecutorial Immunity

Moreover, even if plaintiff's damage claims against District Attorney Phil Haney

and Assistant District Attorney Bofil Duhe were not barred by the rationale of *Heck v.*

*Humphrey*, his claims are not cognizable. Criminal prosecutors enjoy absolute immunity from claims asserted under section 1983 for actions taken in "the initiation and pursuit of a criminal prosecution, including presentation of the state's case ...." *Buckley v. Fitzsimmons*, 509 U.S. 259, 269, 113 S.Ct. 2606, 2613, 125 L.Ed.2d 209 (1993); *Esteves v. Brock,* 106 F.3d 674, 677 (5th Cir. 1997); *Graves v. Hampton*, 1 F.3d. 315, 317 (5th Cir. 1993), abrogated on other grounds by *Arvie v. Broussard*, 42 F.3d 249 (5th Cir. 1994); *See also Kalina v. Fletcher*, 522 U.S. 118, 118 S.Ct. 502, 508-09 (1997); *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999); *Kerr v. Lyford*, 171 F.3d 330, 338 (5th Cir. 1999). As the Supreme Court held, "acts undertaken by the prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State, are entitled to the protections of absolute immunity." *Buckley*, 509 U.S. at 272, 113 S.Ct. at 2615. Accordingly, actions associated with the judicial phase of the criminal process, including "actions preliminary to the initiation of a prosecution and actions apart from the courtroom ..." are entitled to absolute immunity. *Id.* 509 U.S. at 271-272, 113 S.Ct. at 2614-2615. Thus, the Fifth Circuit has held that "[p]rosecutorial immunity applies to the prosecutor's actions in initiating the prosecution and in carrying the case through the judicial process." *Graves,* 1 F.3d at 318; *Booker v. Koonce*, 2 F.3d 114, 116 (5th Cir. 1993); *Kerr*, 171 F.3d at 336. Moreover, immunity shields prosecutors even when they act maliciously, wantonly, or negligently. *Brummett v. Camble*, 946 F.2d 1178, 1181 (5th Cir. 1991) citing *Rykers v. Alford*, 832 F.2d 895 (5th

Cir. 1987). This is so because a prosecutor should not be distracted by threat of subsequent, time consuming and duplicative civil rights actions when performing duties of his office. *Imbler*, 424 U.S. at 424-426, 96 S.Ct. at 992-93; *Brummett*, 946 F.2d at 1181.

Because it appears that Hedge's claims are directed at actions taken by Haney and Duhe in connection with a criminal prosecution as advocate for the State of Louisiana, plaintiff's damage claims against Haney and Duhe are barred.

**D. Sovereign Immunity**

Plaintiff's claim against the State of Louisiana, the Sixteenth Judicial District Court, and the Sixteenth Judicial District District Attorney's Office is barred by the Eleventh Amendment. The Eleventh Amendment prohibits a citizen from suing his own state directly or through its agencies. *Hans v. Louisiana*, 134 U.S. 1, 10 S.Ct. 504 (1890); *Pennhurst State School and Hospital v. Halderman*, 465 U.S. 89, 100, 104 S.Ct. 900, 908 (1984).

The Eleventh Amendment has been judicially interpreted as a bar to suits in federal court by a private party seeking to impose liability which must be paid with funds from the State Treasury. *Blatchford v. Native Village of Noatak,* 111 S.Ct. 2578 (1991); *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). The Eleventh Amendment stands for the "presupposition of our constitutional structure which it confirms: that the States entered the federal system with their sovereignty intact; that the

judicial authority in Article III is limited by this sovereignty." *Blatchford,* 111 S.Ct. at

2580-81.  Therefore, a state is not subject to suit in federal court.  *Board of Trustees of the*

*Univ. of Alabama v. Garrett*, 531 U.S. 356, 363, 121 S.Ct. 955, 962 (2001).

Congress did not abrogate the states Eleventh Amendment immunity by enacting

§1983.  *Champagne v. Jefferson Parish Sheriff's Office*, 188 F.3d 312, 314 (5th Cir.

1999) citing *Quern v.  Jordan*, 440 U.S. 332, 345, 99 S.Ct.  1139, 1145 (1979)*; Hutto v.*

*Finney*, 437 U.S. 678, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978*).*  Therefore, the only avenue

by which plaintiff may sue the State in federal court is if the State, by the most express

language or by overwhelming implications, waives its immunity and thus, consents to be

sued in federal court.  *Ex Parte Young*, 209 U.S. 123, 28 S.Ct. 241, 52 L.Ed. 714 (1908);

*Edelman v. Jordan*, 415 U.S. 651, 673, 94 S.Ct. 1347, 1360-61, 39 L.Ed. 2d 662, 678

(1974); *Brennan v. Stewart*, 834 F.2d 1248, 1251-53 (5th Cir. 1988).  Clearly, Louisiana

has not waived its Eleventh Amendment  immunity. *Champagne*, 188 F.3d at 314 citing

LSA R.S. 13:5106 (prohibiting suits against the State in any court other than a Louisiana

state court*). See also Dagnall v. Gegenheimer*, 631 F.2d 1195 (5th Cir. 1980)*;  American*

*Telephone and Telegraph Co. v. Madison Police Jury,* 465 F.Supp. 168 (W.D.La. 1977);

*Delahoussaye v. City of New Iberia*, 937 F.2d 144 (5th Cir. 1991), *Kiper v. Louisiana*

*State Bd. of Elementary and Secondary Education*, 592 F.Supp. 1343 (M.D.La.), *aff'd.*

778 F.2d 789 (5th Cir. 1985), *Usry v. Louisiana Department of Highways*, 459 F.Supp.

56, 63-64 (E.D. La. 1978) (the State's limited waiver of immunity in La. Const. art.12 §10

from suit in state court must not be misconstrued as a waiver of constitutional immunity

under the Eleventh Amendment from suit against a state in federal court).

Thus, plaintiff's claims against the State of Louisiana, the Sixteenth Judicial

District Court, and the Sixteenth Judicial District District Attorney's Office are clearly

subject to dismissal under the doctrine of sovereign immunity.  Accordingly, plaintiff's

claims against the State and its agencies, the Sixteenth Judicial District Court, and the

Sixteenth Judicial District District Attorney's Office, must be dismissed as frivolous, as

failing to state a claim upon which relief may be granted and as seeking monetary

damages from a defendant who is immune from suit.[4]

## E. Municipal Liability

To the extent that plaintiff attempts to name Iberia Parish as a defendant in this

action by placing the Parish in the caption of his complaint, he has failed to state a claim

upon which relief may be granted.  In a §1983 action, a municipality cannot be held

liable under a theory of *respondeat superior*;  rather, liability must be based upon a

municipality's official or unofficial policy, custom or procedure which causes a

---

[4]Moreover, §1983 prescribes redress for conduct by any "person" who, under color of state law, acts to deprive another person of any right, privilege, or immunity secured by the Constitution and laws of the United States. 42 U.S.C. §1983.  Thus, the defendant must be a "person" as contemplated under the statute.  The Supreme Court has held that states, state agencies and state officials acting in their official capacity are not subject to suit under §1983 even in state court where the Eleventh Amendment would not bar suit because states are not considered "persons" liable under the statute. *Will v. Michigan Dep't of State Police*, 491 U.S. 58 (1989).  Accordingly, it appears that plaintiff has no action against the State of Louisiana, the Sixteenth Judicial District Court, and the Sixteenth Judicial District District Attorney's Office.

deprivation of plaintiff's constitutional rights. *Monell v. Department of Social Services*, 436 U.S. 658 (1978). Furthermore, liability can only be predicated on a policy established by an official whose acts or edicts may fairly be said to represent official policy of the municipality. *Bennett v. City of Slidell,* 728 F.2d 762 (5th Cir. 1984), and on rehearing, 735 F.2d 861 (5th Cir. 1984). Here, plaintiff's complaints are not directed at any official or unofficial municipal policy, custom or procedure of Iberia Parish. As such, plaintiff has stated no claim against Iberia Parish.

**F.** *Habeas Corpus* **Relief**

Moreover, to the extent that plaintiff's allegations may be construed as challenges to the fact or duration of his physical confinement, resulting from his probation revocation, dismissal of this action would nevertheless be appropriate. Challenges to the fact or duration of plaintiff's physical confinement must be pursued in federal court through application for writ of *habeas corpus. Preiser v. Rodriguez*, 411 U.S. 475, 500, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973); *Serio v. Members of the La. State Board of Pardons,* 821 F.2d 1112, 1117 (5th Cir. 1987); *Cook v. Texas Dept. of Criminal Justice Transitional Planning Dept.,* 37 F.3d 166, 167 (5th Cir. 1994); *Carson v. Johnson*, 112 F.3d 818, 820 (5th Cir. 1997). "Challenges to the validity of any confinement or to particulars affecting its duration are the province of *habeas corpus.*" *Muhammad v. Close,* 540 U.S. 749, 750, 124 S.Ct. 1303, 1304 (2004). Indeed, in a pre-*Heck* case, under similar factual circumstances, the Fifth Circuit held that a prisoner's sole federal remedy

for allegations of a civil rights conspiracy involving the presiding judge in his state criminal trial, the prosecuting district attorneys, court reporter and clerk of court for allegedly "manufacturing" his criminal trial and allegedly altering his trial transcript was *habeas corpus*, not a civil rights suit, because if the facts alleged in the complaint were proved, they would factually undermine or conflict with the state court conviction which resulted in his confinement. *Clark v. Williams*, 693 F.2d 381, 382 (5th Cir. 1982).

Plaintiff may not proceed in federal court, however, until he has exhausted state court remedies on his claims through the Louisiana Supreme Court. *Rose v. Lundy*, 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982); *Dickerson v. Louisiana,* 816 F.2d 220, 225 (5th Cir. 1987), *cert. denied*, 484 U.S. 956 (1987); *See also Serio,* supra.   In this case, the record clearly reflects petitioner's failure to exhaust state court remedies.  This conclusion is supported by this court's research which demonstrates an absence of a decision by the Louisiana Supreme Court with respect to plaintiff's alleged unconstitutional revocation proceeding and resulting incarceration.[5] Thus, to the extent the instant action may be construed as seeking *habeas corpus* relief, dismissal without prejudice is appropriate.

## G. Merits

Finally, even if plaintiff could surmount the various procedural and substantive

---

[5]Hedge apparently challenged the revocation of his probation in the Louisiana Third Circuit Court of Appeal under that court's docket number KH 05-00309. [rec. doc. 1-15, p. 51, *State v. Hedge*, KH 05-00309 (La. App. 3rd Cir. 2005)].  However, there is no Louisiana Supreme Court decision with respect to that writ application.

bars to relief noted above, he would nevertheless not be entitled to relief because his claim is manifestly without merit. Plaintiff complains that his probation revocation was invalid as it was based on a "pending charge". However, probation revocation hearings based on criminal conduct rather than on a conviction are sanctioned under Louisiana law. *See* L.C.Cr.P. art. 901.[6] Thus, under Louisiana's statutory probation scheme, probation may be revoked upon sufficient proof *either* that the probationer has been *convicted* of an offense *or* that the probationer has *committed* an offense. *See State v. Harris*, 368 So.2d 1066 (La. 1979). The same is true under federal law; probation may be revoked on an accusation of criminal conduct, a conviction is not required. *United States v. Waldron*, 306 F.Supp.2d 623, 628 (M.D.La.2004); *United States v. Guadarrama*, 742 F.2d 487, 489 (9th Cir.1984); *United States v. Carrion*, 457 F.2d 808, 809 (9th Cir.1972).

Moreover, only limited due process protections are afforded to probationers; state revocation hearings are considered informal, flexible proceedings, and not stages of criminal prosecution. *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972); *Gagnon v. Scarpelli*, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973); *Pennsylvania Bd. of Probation and Parole v. Scott*, 524 U.S. 357, 366 and fn.2, 118 S.Ct. 2014, 2021, 141 L.Ed.2d 344 (1998). Therefore, "the full panoply" of the constitutional rights afforded a defendant in criminal proceedings is not provided to probationers during

---

[6]Louisiana Code of Criminal Procedure article 901 provides in pertinent part that "when a defendant who is on probation for a felony *commits* or is convicted of *a felony* of the laws of this state ... *his probation may be revoked* as of the date of the commission of the felony ...."

revocation proceedings. *Morrissey,* and *Gagnon, supra.* For example, proof of guilt beyond a reasonable doubt is not required in order to revoke probation. *United States v. Grandlund*, 71 F.3d 507, 509 fn.2 (5th Cir.1995), *cert. denied*, 516 U.S. 1152, 116 S.Ct. 1031, 134 L.Ed.2d 108 (1996); *Waldron*, 306 F.Supp.2d at 628. Instead, a preponderance of the evidence standard may suffice. *United States v. Cofield*, 233 F.3d 405, 406 (6th Cir.2000), *cert. denied*, 532 U.S. 952, 121 S.Ct. 1424, 149 L.Ed.2d 364 (2001); *United States v. Bujak*, 347 F.3d 607, 609 (6th Cir.2003). Thus, in cases where probation is revoked on the basis of an accusation that a crime has been committed, rather than a conviction, all that is required is that the judge be reasonably satisfied that a state or federal law has been violated. *Carrion*, 457 F.2d at 809; *Waldron,* 306 F.Supp.2d at 628; *Amaya v. Beto*, 424 F.2d 363, 364 (5th Cir. 1970); *Shaw v. Henderson*, 430 U.S. 1116, 1117 fn. 3 (5th Cir. 1970). Additionally, the traditional rules of evidence do not necessarily apply to revocation proceedings. *Pennsylvania Bd.,* 524 U.S. at 366. Moreover, a probationer's right to confrontation is not the same as the right guaranteed by the Sixth Amendment in a criminal trial. *Gagnon,* 411 U.S. at 786. Finally, there is no absolute constitutional right to counsel at a probation revocation hearing, although due process may require that an attorney be appointed in a particular case. *Gagnon*, 411 U.S. at 787-91; *Jones v. Wainwright*, 604 F.2d 414, 416 (5th Cir.1979). Rather, the need for counsel is left to the sound discretion of the State authority charged with the responsibility of administering the probation system. *Gagnon*, 411 U.S. at 790.

In light of the above, it does not appear that plaintiff has suffered any constitutional violations as a result of the revocation of plaintiff's probation. His § 1983 claim is therefore without merit.

## II. Altered Transcripts

Plaintiff apparently claims that court reporter Nancy Smith and Clerk of Court Michael Thibodeaux are responsible for the alleged alterations in his criminal transcripts. Initially, the undersigned finds that plaintiff's claim against these defendants is barred under the principles set forth in *Heck v. Humphrey* because the validity of petitioner's prior conviction and revocation proceeding would be implicitly questioned if plaintiff were to prevail on his claim. *See Penley v. Collin County, Texas*, 446 F.3d 572, 573 (5th Cir. 2006); *Rodriguez v. Snider*, 2001 WL 984873, 2 (N.D.Tex. 2001) citing *Heck* and *Clark v. Williams*, 693 F.2d 381, 382 (5th Cir. 1982). *See also Norris v. Warder*, 2002 WL 31415920, *2 (N.D.Tex. 2002).

Morever, official court reporters are entitled to qualified immunity under 42 U.S.C. § 1983 if they act "pursuant to their lawful authority and following in good faith the instructions or rules of the Court and were not in derogation of those instructions or rules. *See Rheuark v. Shaw,* 628 F.2d 297, 305 (5th Cir.1980); *Woodall v. Texas*, 78 Fed.Appx. 953, *1 (5th Cir. 2003). Nothing in the record suggests that Smith acted outside of the scope of her official duties, or that she was in derogation of the court's instructions or rules. Moreover, plaintiff makes no more than conclusory allegations to suggest that Smith was acting in bad faith. However, conclusory allegations will not

suffice to prevent dismissal for failure to state a claim. *See Penley v. Collin County, Texas*, 2005 WL 3970822, *6 (E.D.Tex. 2005), aff'd, 446 F.3d 572 (5th Cir. 2006) citing *Fernandez-Montes v. Allied Pilots Association*, 987 F.2d 278, 284 (5th Cir. 1993). Furthermore, plaintiff has not shown that he has a federal constitutional right to an error-free record or that such right was clearly established at the time that the records of his criminal and revocation proceedings were prepared; mere negligence on Smith's part in transcribing the record of the proceedings is not cognizable in a § 1983 action. *Norris v. Warder*, 2002 WL 31415920, *2 (N.D.Tex. 2002). Thus, Smith is entitled to immunity. *See Woodall,* 78 Fed.Appx. at *1; *Penley*, supra.

Likewise, the actions or inactions of Clerk of Court Thibodeaux are protected by absolute quasi-judicial immunity, or alternatively, by qualified immunity. Plaintiff apparently complains that the transcript provided by Thibodeaux's office was altered and that Thibodeaux failed to explain or correct the alleged alterations. Nothing in the record suggests that Thibodeaux acted outside of his official duties as Clerk of the Sixteenth Judicial District Court, or not in accordance with the court rules or orders. Accordingly, Thibodeaux's immunity must be recognized. *See Rodriguez v. Weprin*, 116 F.3d 62, 66 (2nd Cir.1997); *Sindram v. Suda*, 986 F.2d 1459, 1460-1461 (D.C.Cir. 1993); *Sharma v. Stevas*, 790 F.2d 1486 (9th Cir. 1986); *Clay v. Allen,* 242 F.3d 679, 682 (5th Cir. 2001) citing *Tarter v. Hury*, 646 F.2d 1010, 1013 (5th Cir. 1981) and *Williams v. Wood*, 612 F.2d 982, 985 (5th Cir. 1980); *Anderson v. Creighton*, 483 U.S. 635 (1987); *Malley v.*

*Briggs*, 475 U.S. 335 (1986); *Siegert v. Gilley*, 111 S.Ct. 1789 (1991).

## III.  Federal Defendants' Failure to Investigate

Plaintiff complains that the federal defendants (the United States Department of Justice, the Federal Bureau of Investigations and Andy Marsh of the Federal Bureau of Investigations) have failed to investigate his complaints regarding the alleged alteration of his criminal transcripts.  Accordingly, he requests an order of this court "declaring [his] right to have [his] claims investigated by federal authorities." [doc. 1-1, p. 4, ¶ V]. Plaintiff's claim is frivolous.  There is no constitutional right to have someone investigated or criminally prosecuted.  *See Oliver v. Collins*, 914 F.2d 56, 60 (5th Cir.1990); *Autrey v. Mississippi*, 66 Fed. App'x. 523, 523 (5th Cir.2003) (per curiam); *Polk v. City of Corsica,* 2006 WL 385127, *4 (N.D.Tex. 2006); *Burchett v. Self,* 30 F.3d 133, 1994 WL 276865, *2 (6th Cir.1994) (unpublished) (failure to investigate does not raise a constitutional claim); *Scher v. Chief Postal Inspector,* 973 F.2d 682, 683-84 (8th Cir.1992) (inmates failed to state *Bivens* claim based on refusal of post office employees to investigate complaint regarding prison administrators' treatment of their mail); *Gomez v. Whitney,* 757 F.2d 1005, 1006 (9th Cir.1985) (lack of police investigation, by itself, was not a deprivation of a constitutional right); *Hicks v. Bowles,* 2003 WL 251543, *4, 3:03cv1228-L (N.D.Tex. 2003); *Malloy v. City of New York,* 1996 WL 648927, *2 (S.D.N.Y. 1996) (unpublished) (there is no constitutional right to an investigation or arrest of an individual who has committed an assault upon a prisoner unless the omission

or inadequacy of the investigation itself resulted in a deprivation of a constitutional right). Rather, the decision as to whether to initiate investigations lies within the discretion of the executive branch. *See Heckler v. Chaney*, 470 U.S. 821, 832, 105 S.Ct. 1649, 1656 (1985); *Inslaw, Inc. v. Thornburgh*, 753 F.Supp. 1, 5-6 (D.Ct.D.C.); *United States v. Rockwell*, 924 F.2d 928, 937-38 (9th Cir. 1991)(Reinhardt, concurring); *United States v. Hunter*, 13 F.Supp.2d 586, 591 (D.Vermont 1998). It is not the province of this court to inject itself into traditionally executive areas of decision making as that would implicate the constitutional principle of separation of powers. *Olagues v. Russoniello*, 770 F.2d 791, 802-03 (9th Cir. 1984); *Inslaw, Inc.*, *Supra.*

## IV. Conspiracy

Finally, to the extent that plaintiff complains that his present incarceration is the result of an alleged "two-part eight (8) year continuous conspiracy" by the defendants to deprive him of his constitutional rights, the claim is frivolous. [rec. doc. 1-3, p. 2]. Such bald, conclusory allegations that a conspiracy exists are insufficient to state a conspiracy claim. *Babb v. Dorman,* 33 F.3d 472, 476 (5th Cir. 1994); *Young v. Biggers*, 938 F.2d 565, 569 (5th Cir. 1991); *Lynch v. Cannatella*, 810 F.2d 1363, 1369-70 (5th Cir. 1987); *Marts v. Hines*, 68 F.3d 134, 135 (5th Cir. 1995); *Rodriguez v. Neeley*, 169 F.3d 220, 222 (5th Cir. 1999) citing *McAfee v. 5th Circuit Judges,* 884 F.2d 221 (5th Cir.1989), *cert. denied,* 493 U.S. 1083, 110 S.Ct. 1141, 107 L.Ed.2d 1046 (1990).

## V. Injunctive and Declaratory Relief

Plaintiff also requests that this court order a stay of all proceedings in connection with his state criminal prosecution for D.W.I. fourth offense, pending in Sixteenth Judicial District Court docket number 04-CR-1398, and also that this court enjoin the state from proceeding with its prosecution of plaintiff until a thorough investigation of his complaints is completed. Plaintiff additionally requests that this court order the state court not to allow evidence of his prior conviction, entered under docket number 04-cr-1398. This court cannot grant plaintiff the relief plaintiff requests.

Clearly, this court lacks jurisdiction to issue an order to a state court to act upon a case pending before it. *Moye v. Clerk, DeKalb County Superior Court*, 474 F.2d 1275, 1276 (5th Cir. 1973)(a federal court lacks the general power to issue writs of mandamus to direct state courts and their judicial officers in the performance of their duties) citing *Lamar v. 118th Judicial District Court of Texas*, 440 F.2d 383 (5th Cir., 1971) and *Haggard v. Tennessee,* 421 F.2d 1384 (6th Cir., 1970).

Moreover, it is well settled that federal courts should not interfere in ongoing state court proceedings except in very unusual situations, not established in this case[7], based

---

[7]Courts may disregard the *Younger* doctrine only if one of the narrowly delineated exceptions to the doctrine applies. These exceptions include cases where it is established that the state court proceeding was brought in bad faith or with the purpose of harassing the federal plaintiff, when a state statute is "flagrantly and patently violative of express constitutional prohibitions in every clause, sentence, and paragraph, and in whatever manner and against whomever an effort might be made to apply it," or when application of the doctrine was waived. *Texas Association of Business v. Earle*, 388 F.3d 515, 519 (5th Cir. 2004) (citations omitted). In light of the above analysis and the conclusory nature of plaintiff's allegations, plaintiff has failed to establish that his state court criminal prosecution has been brought in bad faith or merely to harass plaintiff. *See Perez v. Ledesma,* 401 U.S. 82, 85, 91 S.Ct. 674, 677 (1971) (requiring that harassment and bad faith be proven for federal intervention into a pending state criminal prosecution); *Ballard v. Wilson*, 856 F.2d 1568, 1570-1571 (5th Cir. 1988) (same); *Wightman v. Texas Supreme Court*, 84 F.3d 188, 190-191 (5th Cir. 1996) (requiring more than mere allegations of bad faith for application of the bad faith/harassment exception); *Wilcox v. Miller*, 691 F.2d 739, 741 (5th Cir. 1982). *See also*

upon principles of federalism and comity.  *See Younger v. Harris*, 401 U.S. 37, 91 S.Ct.

746,  27 L.Ed.2d 669 (1971)[8]; *See also Samuels v. Mackell,* 401 U.S. 37, 54, 91 S.Ct. 764,

768 (1971) (applying *Younger* to claims for declaratory relief).  The *Younger* abstention

doctrine "is generally deemed appropriate [when] assumption of  jurisdiction by a federal

court would interfere with pending state proceedings, whether of a criminal, civil, or even

administrative character."  *Word of  Faith World Outreach Center Church, Inc. v.*

*Morales*, 986 F.2d 962, 966 (5th  Cir.), *cert. denied*,   510 U.S. 823, 114 S.Ct. 82, 126

L.Ed.2d 50 (1993).

It is well settled that the *Younger* abstention doctrine is fully applicable even

where federal intervention would not bring the prosecution to a halt.  "The *Younger*

abstention doctrine does not rest entirely on respect for a state's interests in enforcement

of its criminal laws.  An equally significant dimension of the *Younger* holding is the

respect for the integrity and competence of state judicial officials in adjudicating

constitutional issues before them." *Kramer v.  Metro-Dade Corrections and*

*Rehabilitation Department*, 822 F.  Supp.  1572, 1574 (S.D. Fla.  1993) citing *Wilson v.*

---

*Cabello v. Lowe*, 83 Fed.Appx. 624, *1 (5th Cir. 2003); *Granger v. Slade*, 90 Fed.Appx. 741 (5th Cir. 2004).

[8]The Supreme Court's decision was grounded on principles of equity and on notions of comity, to which it gave the name, "Our Federalism".  "Our Federalism" represents a "system in which there is sensitivity to the legitimate interests of both State and National governments, and in which the National Government, anxious though it may be to vindicate and protect federal rights and federal interests, always endeavors to do so in ways that will not unduly interfere with the legitimate activities of the States." *Id.*  at 44, and at 750.  The notion of comity "includes a proper respect for state functions, a recognition of the fact  that the entire country is made up of a union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways." *Middlesex County Ethics Comm. v. Garden State Bar Assn.*, 457 U.S. 423, 431-32, 102 S.Ct.  2515, 2520-21 (1991).

*De Bruyn*, 633 F. Supp. 1222, 1225 (W.D.N.Y. 1986).

As the District Court for the Southern District of Florida aptly stated, it "is simply not the role of this Court to supervise [the state court's] handling of the criminal defendant. In implementing the *Younger* policy of non-interference, federal courts must focus upon the practical impact of any potential ruling. If this court granted declaratory or injunctive relief to [plaintiff], the court would become inextricably intertwined with the daily administration of the state criminal proceedings and the custody of the state defendant." *Id.* at 1575. The Fifth Circuit has expressed those same sentiments in *Ballard v. Wilson*, 856 F.2d 1568, 1570 (5th Cir. 1988) stating that "we cannot ignore the fact that any injunction or declaratory judgment issued by a federal court would affect the course and outcome of the state proceedings ...." Moreover, "a federal court ruling on the practices and procedures of the municipal court system ... would require supervisory enforcement of the ruling by the federal courts .... This type of monitoring of state court procedures also offends principles of federalism and was condemned by the Supreme Court in *O'Shea v. Littleton* ...." *Id.* at 1570 (citation omitted).

With respect to plaintiff's requests for declaratory and injunctive relief herein, the undersigned finds this reasoning compelling. Plaintiff is requesting that this Louisiana federal court make declaratory and injunctive orders which would affect an ongoing Louisiana state court criminal prosecution. However, the *Younger* doctrine prohibits this court from granting plaintiff the requested relief in the absence of an exception to the

*Younger* doctrine, none of which has been established herein.  Accordingly, plaintiff's request for declaratory and injunctive must be dismissed.

For the reasons set forth above;

**IT IS RECOMMENDED** that plaintiff's civil rights complaint be **DISMISSED WITH PREJUDICE** as barred under the principles set forth in *Heck v. Humphrey*, and as frivolous, as failing to state claims on which relief may be granted, and because plaintiff seeks relief against defendants who are immune from suit.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Fed.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the clerk of court. A party may respond to another party's objections within ten (10) days after being served with copy thereof.

**Failure to file written objections to the proposed factual finding and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See *Douglas v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).**

Lafayette, Louisiana, August 24, 2006.

C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE